## JONES v. MIDLAND VALLEY R. CO.
### No. 1830.

Circuit Court of Appeals, Tenth Circuit.
June 19, 1939.

C. A. Ambrister, of Muskogee, Okl., for appellant.

Charles P. Gotwals, of Muskogee, Okl. (Wm. A. Killey and James D. Gibson, both of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNAMER, District Judge.

PHILLIPS, Circuit Judge.

By a written lease, dated July 1, 1929, the Title Guaranty Trust Company leased to the Midland Valley Railroad Company the second, third, and fourth floors and certain space on the fifth floor of the Railway Exchange Building in Muskogee, Oklahoma, for the term beginning July 1, 1929, and ending July 1, 1934, at a rental of $925 per month, payable monthly in advance. Thereafter, the title to the Railway Exchange Building passed to Josephine C. Jones. The Railroad Company refused to pay the rent for the month of December, 1931. On January 6, 1932, Mrs. Jones brought an action against the Railroad Company in the district court of Muskogee County, Oklahoma, to recover the sum of $925 rent for the month of December, 1931.

On February 22, 1932, Zeb P. Jackson, acting as agent for Mrs. Jones, and the Railroad Company entered into an oral agreement under the terms of which the accrued rental for December, 1931, and January and February, 1932, was to be reduced to $772.50 per month, and the rental for the month of March, 1932, and thereafter was to be reduced to $620 per month. The Railroad Company was to surrender the third floor and part of the fifth floor and was to be furnished space for its paymaster on the first floor and the operation of one elevator was to be discontinued.

In accordance with the oral agreement, the Railroad Company surrendered the space on the third floor and part of the fifth floor and went into possession of space for its paymaster on the first floor and the service of one elevator was discontinued.

On February 22, 1932, the Railroad Company submitted to Jackson a proposed draft of a new lease of the space stipulated in the oral agreement. It was for a term beginning January 1, 1932, and ending July 1, 1934, and stipulated a rental of $620 per month, payable monthly in advance. Jackson forwarded the draft to Mrs. Jones. She refused to execute it.

On February 29, 1932, the Railroad Company delivered to Jackson its check payable to Mrs. Jones in the sum of $2,937.50. The check contained the following recitals:

"In full of office rent for second, third, fourth and part of fifth floors of Railway Exchange Building, Muskogee, Okla., up to and including the 29th day of February, 1932, as agreed with Zeb P. Jackson, Agent, February 22, 1932, $2317.50. Rent in advance for the month of March, 1932, for second, fourth and parts of first and fifth floors as agreed with Zeb P. Jackson, Agent, February 22, 1932, $620.00, total $2937.50. * * * This voucher is endorsed as an acknowledgment of the receipt of payment in full of account as stated within."

With the approval of Mrs. Jones, Jackson accepted, endorsed in her name, and cashed the check.

Thereafter, the Railroad Company delivered to Jackson its checks payable to Mrs. Jones for the rental on the basis of $620 per month for the months of April to December, 1932, inclusive, and January, February, and March, 1933. Each check contained on its face the following recital:

"For rent of second, fourth, and parts of first and fifth floors of the Railway Exchange Bldg., Muskogee, Oklahoma, for the month of (here was inserted the appropriate month)."

Jackson, as agent for Mrs. Jones, accepted, endorsed, and cashed the checks.

In February, 1933, the Railroad Company notified Mrs. Jones that it would vacate the premises on or about April 1, 1933.

The Railroad Company continued to occupy the space in the Railway Exchange Building in accordance with the oral agreement until April 30, 1933. It vacated the leased premises on that date and forwarded to Mrs. Jones its check for the rental for April, 1933, bearing the following recital:

"In full payment and discharge of all obligations for or on account of office space in the Railway Exchange Building, Muskogee, Oklahoma, having completely vacated as of April 30th, 1933, $620.00."

Mrs. Jones refused to accept the check and on December 7, 1933, brought this action against the Railroad Company to recover on the original lease rental from December 1, 1931, to the end of the term on the basis of the rental provision of the original lease, less the payments made by the Railroad Company.

In its answer the Railroad Company pleaded the oral agreement and alleged "that no term of occupancy was fixed thereby," that it paid the rentals pursuant to the oral agreement to and including the month of March, 1933, and that pursuant to notice given in February, 1933, it vacated the premises on March 31, 1933.

At the close of the evidence counsel for Mrs. Jones requested the court to find that the original lease was modified by the oral agreement with respect to the space to be occupied by the Railroad Company, the rental to be paid, and the elevator service.

The trial court found the facts substantially as above stated. It concluded that the written lease was abrogated and discharged by the oral agreement and that by virtue of the oral agreement the parties entered into a new agreement for the rental of different space on a month-to-month basis at a rental of $620 per month.

From a judgment for the Railroad Company, Mrs. Jones has appealed.

Section 9502, O.S.1931, 15 Okl.St.Ann. § 237, reads as follows:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The supreme court of Oklahoma has many times construed this statute to mean that a contract in writing may be modified only by a contract in writing or an executed oral agreement. Fenner v. Sparks, 170 Okl. 556, 39 P.2d 27, 30; Clark v. Slick Oil Co., 88 Okl. 55, 211 P. 496, 500; Tackett v. Bell, 117 Okl. 15, 244 P. 164, 165.

However, in the case of Levin v. Hunt, 70 Okl. 63, 172 P. 940, 941, the court said:

"While under the above-quoted statute, it is plain that the parties to a written contract cannot alter the same by parol agreement, it is well settled that they may, by parol, rescind, discharge, or terminate a written contract, or may enter into a new contract as a substitute for the old."

The above language was quoted with approval in Schlegel v. Kinzie, 158 Okl. 93, 12 P.2d 223, 225, and Minnehoma Oil Co. v. Koons, 99 Okl. 266, 226 P. 1048, 1050.

On the other hand, in the case of Walker v. Johnson, 102 Okl. 9, 227 P. 113, 114, the court, referring to Levin v. Hunt, supra, said:

"This case is in conflict with the case of Maisen v. Cartwright, 43 Okl. 737, 144 P. 375, which supports the rule which we have here announced and in which the following language is used:

" 'As the effect of the execution of the subsequent oral agreement would be an alteration to its entire abrogation of the contract in writing, and Comp.Laws 1909, Sec. 1139 (Rev.Laws 1910, Sec. 988, 15 Okl.St. Ann. § 237) provides: "A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise," the petition fails to state facts sufficient to constitute a cause of action. This for the reason that, if the contract in writing cannot be thus abrogated, the contract stands as written, and the law will not recognize the oral agreement sought to be enforced.' "

And in Wichita Flour Mills Co. v. Guymon Equity Exchange, 150 Okl. 245, 1 P. 2d 657, 659, the court said:

"In the case of Walker v. Johnson, 102 Okl. 9, 227 P. 113, this court said: 'Section 5081, C.S.1921, 15 Okl.St.Ann. § 237, which provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise," not only prevents the alteration of a written contract, as to some of its terms, by an unexecuted parol contract, but also prevents an alteration of the contract as to all of its terms, so as to amount to a substitution of a new contract for the written contract, unless such new contract is in writing, or is an executed oral contract.' "

Counsel for the Railroad Company rely upon the three cases first adverted to above and counsel for Mrs. Jones relies upon the three cases last adverted to above. It is our view it is unnecessary to resolve the conflict in the Oklahoma decisions.

■ We are of the opinion the evidence clearly established that the oral agreement did not entirely abrogate but merely modified the original contract with respect to the space to be occupied, the elevator service, and the rental to be paid by the Railroad Company. Jackson testified that the term was not discussed at the time the oral agreement was entered into, but that it was mutually understood it was to be for the remainder of the term of the original lease. The new lease prepared by the Railroad Company modified the original lease as to space occupied and the amount of rental to be paid in accordance with the oral agreement, and provided that the new lease should run for the unexpired portion of the term of the original lease. The testimony of Jackson as to the terms of the oral agreement and the fact that the term was not discussed was in no wise controverted by the Railroad Company. Indeed, the Railroad Company in its answer alleged "that no term of occupancy was fixed" by the oral agreement. True, Swan, attorney for the Railroad Company, testified that on October 17, 1932, Jackson stated he understood the Railroad Company was occupying the premises on a month-to-month basis, and that on December 9, 1932, C. A. Ambrister, attorney for Mrs. Jones, stated the husband of Mrs. Jones had stated to him he would rather have the lease on a month-to-month basis. Those statements were mere expressions of the legal effect of what the parties had done. The undisputed proof shows that the parties entered into an oral agreement whereby they agreed to modify the terms of the original contract with respect to the premises to be occupied, the amount of rental to be paid, and the elevator service, but which contained no stipulation respecting the term of occupancy. If the oral agreement was valid and enforceable, its legal effect was to modify the written lease with respect to the premises to be occupied, the elevator service, and the amount of rental to be paid, and to leave it otherwise in full force and effect.

■ The Railroad Company surrendered certain space on the third and fifth floors and went into the occupancy of the new space on the first floor and one elevator was discontinued. Hence, the portion of the oral agreement respecting those matters was fully executed.

That portion of the oral agreement respecting the reduction in rental was reduced to writing by the memoranda on the checks of the Railroad Company which were accepted and endorsed by Jackson as agent for Mrs. Jones.

We conclude, therefore, that the written lease was effectually modified by the oral agreement executed with respect to certain of its stipulations and reduced to writing with respect to the remainder of its stipulations.

It follows that Mrs. Jones was entitled to recover on the original lease as modified, rental on the basis of $620 per month from April 1, 1933, to the end of the term of the original lease.

The judgment is reversed and the cause remanded with instructions to grant Mrs. Jones a new trial.

Reversed and remanded.